IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **BRADLEY WILSON,** *et al.*, | * | |
| | * | |
| **Plaintiffs,** | * | |
| v. | * | Civil Case No. 1:22-CV-02729 |
| | * | |
| **CSX TRANSPORTATION, INC.,** | * | |
| | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Bradley Wilson and Brandi Houghtling (collectively "Plaintiffs") filed this lawsuit in the Circuit Court for Baltimore City, Maryland, asserting that Defendant CSX Transportation, Inc. ("CSX") negligently caused an accident between Wilson's car and a CSX train. ECF 6. CSX removed the case to this Court, ECF 1, and has now filed a Motion to Dismiss, or in the alternative, for Summary Judgment ("the Motion"). ECF 11. This Court has reviewed the Motion and the opposition and reply, along with the attached exhibits. ECF 21, 24. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Defendant's Motion, treated as a motion for summary judgment, will be granted because Wilson's contributory negligence bars recovery for any claims that have been adequately pleaded.

I.  FACTUAL BACKGROUND

The specific facts surrounding the train accident are relatively ascertainable, as testimony has been taken in a related court proceeding and the incident was captured on video from two vantage points. These facts are summarized from the allegations in Plaintiff's Complaint and the exhibits attached to CSX's Motion.

On September 17, 2019, Wilson was driving "lawfully and carefully" on 68th Street in Rosedale, Maryland. ECF 6 ¶ 3. At the relevant portion of the road, 68th Street runs southward, bends westward, and then makes a 90-degree turn back southward before intersecting with railroad tracks. ECF 11-3 at 3. The railroad crossing is marked by a stop sign approximately 10–20 feet away from the intersection. Otherwise, the railroad crossing has no traffic signal or moveable arm to prevent access to the track. *Id.* ¶ 4; ECF 11-11 at 73:11–24. On the morning of September 17, 2019, a stack of railroad ties was piled up along the tracks, and the bushes and trees were overgrown such that a driver would have to pass the stop sign to see any oncoming train. ECF 6 ¶ 4.

While on his way to work, Wilson drove his sedan around the bend of 68th Street and then slowed his car, but did not stop, as he made the left turn before the railroad intersection. He continued as a steady pace and continued this pace directly onto the railroad tracks, tapping the brakes only briefly before his car traversed the tracks. He did not stop at the stop sign or anytime thereafter before crossing the train tracks. *See* video exhibits, ECF 11-7 and ECF 11-10. The train, traveling at approximately forty-six to forty-seven miles per hour, blew its horn repeatedly upon approaching the intersection. *Id.* Nevertheless, Wilson's car proceeded onto the tracks. *Id.* The train ran into the passenger's side of Wilson's car. *Id.* Despite the train's power being cut right after impact, the train dragged the vehicle a significant distance down the tracks before coming to a stop. *Id.* Wilson survived but suffered serious bodily injury, including permanent visual impairment. ECF 6 ¶ 10.

Over the last forty-five years or so, thirty-two accidents, including two fatalities, happened "along this same two-mile stretch of railroad track" and CSX had access to but did not use public funding to improve the safety conditions at this crossing. *Id.* ¶ 7.

## II.     LEGAL STANDARD

CSX has filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, a motion for summary judgment. ECF 11. A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).

CSX attached several exhibits to its Motion, and asks, in the alternative, that summary judgment be granted in its favor. ECF 11. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo*

*Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support an element of the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348–49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

Relevant to this case, summary judgment typically is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, 637 F.3d at 448–49. However, "the

4

party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To present the issue, the nonmovant is typically required to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d), explaining why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery. Trial courts have discretion whether to grant or deny relief under Rule 56(d), *see Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 280 (4th Cir. 2013), and courts generally "place great weight" on the Rule 56(d) affidavit because it ensures a party does not overturn summary judgment by simply failing to comply with the requirement of Rule 56(d). *Evans*, 80 F.3d at 961.[1] Here, no Rule 56(d) declaration has been filed, and Plaintiffs use the evidence submitted by CSX to argue why, in their view, material facts are in dispute. *See, e.g.*, ECF 21-1 at 2–9 (citing to, quoting, and describing the exhibits). This Court therefore concludes that it is appropriate to consider this case under the summary judgment standard, given the ample record presented and the lack of any proffered evidence that could be gleaned via discovery.

### III.     ANALYSIS

The issues in this case are (1) whether CSX was negligent in its maintenance of the intersection or operation of the train and (2) whether Wilson was contributorily negligent, or

---

[1] Plaintiffs note that they are proceeding "without the benefit of some actual discovery which would be nice to have," ECF 21-1 at 10, but do not specify reasons why discovery is needed to present facts essential to justify their opposition. *Cf. Sanders v. Callender*, No. 17-cv-1721, 2019 WL 3717868, at *3 (D. Md. Aug. 6, 2019) (denying relief under Rule 56(d) where a plaintiff's affidavit merely stated that he "has yet to conduct any discovery"). The pre-discovery evidentiary record in this case is fairly robust, given the clear video evidence and the prior criminal proceeding in which the most relevant witnesses testified under oath.

assumed the risk of his injury, by failing to stop his vehicle before proceeding to cross the train tracks. Ultimately, this Court holds that Wilson's failure to stop prior to crossing a railroad intersection with an obstructed view amounts to contributory negligence as a matter of law and bars any recovery. To reach this conclusion, this Court first considers the alleged negligence by CSX, reviewing these allegations under a motion to dismiss standard and, if necessary, proceeding under a motion for summary judgment standard. The Court then turns to the evidence establishing Wilson's contributory negligence.

### A. CSX's Negligence

Plaintiffs' Complaint sets forth seven theories of negligence on the part of CSX. Some of those theories will be combined for purposes of this Court's analysis.

#### 1. Excessive Train Speed

The parties agree that the train was traveling at forty-six or forty-seven miles per hour when it collided with Wilson's vehicle. ECF 11-1 at 8; ECF 21-1 at 7. Plaintiffs suggest that the speed was not "reasonable under the circumstances" given the history of other accidents in the general location and "obstructions along the tracks that impaired [the operator's] view." ECF 21-1 at 7. The United States Supreme Court has decided, however, that the federal regulations promulgated pursuant to the Federal Railroad Safety Act preempt a plaintiff's "negligence action only insofar as it asserts that [a] train was traveling at an excessive speed." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 673–76 (1993). Because this train's speed fell within the operating speed limits for the stretch of track in question,[2] Plaintiffs' excessive speed theory cannot provide a basis for their negligence claim, and this argument fails as a matter of law.

---

[2] Plaintiffs do not argue the train travelled in excess of the speed limit. *See* 49 C.F.R. § 213.9(a) (listing maximum allowable operating speeds for freight trains on different classes of track).

### 2. Failure to Install Safety Measures at the Crossing

Plaintiffs also contend that CSX was negligent for choosing "not to install any flashing signal lights, gates, etc." at the crossing. ECF 6 ¶ 9. However, Maryland law plainly places the authority to change or improve any railroad crossing in the hands of the Secretary of the Maryland Department of Transportation, not CSX. *See* Md. Code Ann., Transp. Art., ("TA") § 8-639(a) (Westlaw 2022). In fact, the statute expressly prohibits a railroad from unilaterally "chang[ing] the crossing protection equipment" at a crossing over a road. *Id.* Despite this prohibition, Plaintiffs attempt to hold CSX accountable by arguing CSX should have applied to the Secretary for additional crossing protection equipment and the failure to petition the government for action amounted to negligence. ECF 21-1 at 7–8. However, the statute explains that when an application is made by a railroad, a process ensues, often including a hearing after notice to adjacent property owners. TA § 8-639(c). Even if it were true that CSX never applied for additional equipment, the mere failure to submit an application cannot be the proximate cause of Wilson's injury. For this reason, Plaintiffs fail to state a claim upon which relief may be granted.

### 3. Train Operator Negligence

Plaintiffs claim three theories of negligent conduct by the train operator, specifically failures "to exercise reasonable care at a railroad crossing such as a prudent operator of a train would under like circumstances," "to maintain a proper lookout for motor vehicles at the railroad crossing," and "to have the train under proper control to avoid colliding with a motor vehicle at a railroad crossing." ECF 6 ¶ 9. However, these claims do not survive Defendant's motion to dismiss. Plaintiffs do not allege facts to suggest that any such claim is plausible, like specifying something that this train's operator did that he should not have done, or something he failed to do that he should have done. In fact, Plaintiffs' Complaint makes no mention of any actions by the

train operator at all. Their conclusory, barebones assertions, then, do not suffice to state a viable negligence claim.

Even if this claim could survive Defendant's motion to dismiss, there is no evidence that the train operator failed to exercise reasonable care—just the opposite. The train was traveling under the speed limit and power was cut off as soon as the train collided with the car. The train's whistle sounded automatically as it approached the intersection, and then the operator repeatedly sounded the whistle from the moment the car approached the intersection to the moment of the collision. ECF 11-11 at 44:4–5, *see also* video evidence. The operator was paying attention because he blew the whistle as soon as it became clear that the car appeared unlikely to stop at the intersection. Given the weight of the freight train, the train could not stop in time to avoid hitting the car, as evidenced by the far distance traveled by the train once the operator cut the train's power. Thus, the whistle was the train operator's best defense and warning. In sum, there is no evidence to suggest that the train operator acted negligently in any respect, given his limited options as the train proceeded along the track.

### 4. CSX's Negligent Maintenance and Warning

Plaintiffs' final two theories of negligence allege that CSX "failed to maintain the area around the railroad tracks in a safe condition to avoid obstructing the driver of a motor vehicle from being able to timely see an oncoming train" and "failed to give reasonable notice of these unsafe conditions." Arguably, Plaintiffs have sufficiently alleged facts to state a claim as to the first of those two theories, by asserting that CSX stacked railroad ties along the tracks and failed to properly trim bushes and trees, thus obscuring the sight line between an approaching vehicle and the train. ECF 6 ¶ 4. In addition, the video evidence and other record evidence reflect the

existence of the railroad ties and shrubbery, and would create a genuine issue of material fact as to the sight lines permitted by those conditions.

As to the second theory, though, Plaintiffs do not allege any facts or present any evidence regarding what "reasonable notice of these unsafe conditions" would look like. From the face of the Complaint, Plaintiffs have not made clear what warnings might have prevented the crash. Further, Wilson drove across these tracks daily on his way to work, and states that the tracks were obstructed by bushes, railroad ties, and trees. ECF 6 ¶ 3, 4. Thus, Wilson knew in advance of the obstruction. Additional notice by CSX would not have changed the outcome. At present, Plaintiffs' only viable negligence theory is CSX's failure to maintain the area along the tracks.

### B. Wilson's Negligence *Per Se*

Although Plaintiffs allege one viable negligence claim, CSX contends that this Court should grant summary judgment in its favor because Wilson was contributorily negligent. Contributory negligence is defined as a breach of the duty to observe ordinary care for one's own safety, which proximately causes an accident. *Thomas v. Panco Mgmt. of Maryland, LLC*, 423 Md. 387, 417 (2011) (citations omitted). Under Maryland law, a plaintiff's own contributory negligence will generally bar recovery. *See Coleman v. Soccer Ass'n of Columbia*, 432 Md. 679, 695 (2013).

This Court is well aware, of course, that Maryland law dictates that contributory negligence cases often present fact questions for a jury. *See, e.g.*, *Wiggins v. State*, 232 Md. 228, 237 (1963) ("The absence or presence of contributory negligence is generally a question for the jury.") (internal citation omitted). That general principle, however, is not absolute. An issue of contributory negligence is for the jury where "there is a conflict of evidence as to material facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn

therefrom." *Baltimore Gas and Elec. Co. v. Flippo*, 348 Md. 680, 703 (1998) (internal citation and quotation marks omitted). But contributory negligence can be established as a matter of law where the evidence shows "some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds." *Id.* at 696 n.4 (quoting *Reiser v. Abramson*, 264 Md. 372, 378 (1972)); *see, e.g.*, *id.* at 703 (explaining an individual can be deemed contributorily negligent as "a matter of law" in so-called "electric shock cases").

The appropriate analysis of this case starts with the applicable standard of due care for a driver approaching a railroad track.[3] As CSX argues, this standard has been established under Maryland law for nearly 140 years:

> The rule is now firmly established in this state, as it is elsewhere, that it is negligence *per se* for any person to attempt to cross tracks of a railroad without first looking and listening for approaching trains; and, if the track in both directions is not fully in view in the immediate approach to the point of intersection of the roads, due care would require that the party wishing to cross the railroad tracks should stop, look, and listen before attempting to cross. Especially is this required where a party is approaching such crossing in a vehicle, the noise from which may prevent the approach of a train being heard. And if a party neglect these necessary precautions, and receives injury by collision with a passing train, which might have been seen if he had looked, or heard if he had listened, he will be presumed to have contributed, by his own negligence, to the occurrence of the accident; and, unless such presumption be repelled, he will not be entitled to recover for any injury he may have sustained.

---

[3] The parties vigorously dispute the effect of Wilson's failure to stop at the marked stop sign located about 10–20 feet before the railroad tracks. *See* ECF 11-11 (trial testimony) at 73:11–24 (establishing the location of the sign). While the video evidence establishes beyond question that Wilson did not come to a complete stop at the sign, taking the evidence in the light most favorable to Plaintiffs, stopping at the sign would not have afforded Wilson a clear, unobstructed view of the train tracks or the approaching train. Thus, this Court does not rely on Wilson's failure to stop at the stop sign specifically, but more broadly on his failure to stop at any point to look for an oncoming train before driving onto the tracks.

*Philadelphia, W. & B.R. Co. v. Hogeland*, 7 A. 105, 107 (Md. 1886). While *Hogeland* involved an accident between a train and a horse-and-buggy, this "stop, look, and listen" rule remains good law and has been cited many times by Maryland courts through the years. *See, e.g.*, *Glick v. Cumberland & Westenport Elec. Ry. Co.*, 124 Md. 308, 312 (1914); *Director General of Railroads v. Hurst*, 135 Md. 496, 506 (1920); *Pennsylvania R.R. Co. v. Yingling*, 148 Md. 169, 179 (1925); *Baltimore v. Ohio R.R. Co. v. Andrews*, 190 Md. 227, 235 (1948); *Saponari v. CSX Transp., Inc.*, 125 Md. App. 25, 37 (1999). It therefore constitutes the legal standard against which Wilson's conduct must be judged.

Accordingly, given the ample evidence that Wilson did not have a full, unimpeded view of the tracks in both directions, this Court must determine whether Wilson "stopped, looked, and listened" before crossing the tracks, taking the evidence in the light most favorable to Plaintiffs as the non-moving party. Here, this Court has an advantage not available to the courts adjudicating horse-and-buggy accidents 140 years ago: video evidence of the entire incident has been played for this Court during an in-court proceeding.[4] This Court watched two videos. The first (Exhibit E) is the video evidence from the train operator's viewpoint (the "LVDR" recording). ECF 11-7. Plaintiffs do not contest the admissibility of this video. The second (Exhibit H) is video evidence recorded from a surveillance camera at a nearby business. ECF 11-10. Plaintiffs object to this Court's consideration of Exhibit H on summary judgment, as they "suspect" it could not be put in admissible form before trial. ECF 21-1 at 8–9. However, CSX has attached to its reply two declarations to authenticate the surveillance video and to establish that it accurately depicts the events leading to the collision. ECF 24-1 (declaration of individual who installed the surveillance

---

[4] Although the videos were submitted as exhibits to CSX's memorandum, due to licensing issues and technical issues, this Court was only able to view the videos when played in open court by CSX with all parties present.

camera), 24-2 (declaration of train operator who witnessed the event that the surveillance camera is a true and accurate depiction of his observations). This Court therefore will consider both videos in its assessment of the evidence.

Video evidence from outside Wilson's car, obviously, cannot capture whether he looked or listened upon his approach to the train tracks. Even if it could, the videos would not reveal definitively whether Wilson saw or heard the train coming.[5] The video evidence does establish, beyond dispute, that Plaintiff braked but did not stop at any point on his approach to the train tracks. And in that vein, the video evidence corroborates the testimony of the witnesses, who confirmed that Wilson braked but did not stop. *See* ECF 11-11 at 44 (trial testimony of the train operator); *id.* at 89 (trial testimony of Wilson) (describing his everyday practice at the crossing as "when I got close to the stop sign, I would slow down and then proceed up"); *id.* at 95 (trial testimony of Wilson describing the day of the accident) ("Q: And your vehicle did not come to a stop; is that correct? A: It didn't come to a complete stop. Q: It didn't come to any stop. You went in front of the train and the train hit you; is that correct? A: Yes."); *id.* at 98 (trial testimony of Wilson describing the day of the accident) ("Q: Mr. Greenbaum asked you if you just drove

---

[5] This Court notes that the LVDR video documented three complete blasts of the train's horn before Wilson's car proceeded onto the tracks, and a fourth ongoing blast at the time the collision occurred. While this Court need not reach the issue, this evidence appears sufficient to discount Plaintiff's testimony that he was "listening" as he approached the tracks. In *Baltimore O.R. Co. v. Bruchy*, the then-Maryland Court of Appeals held that the lower court should have granted a directed verdict in favor of the railroad on a contributory negligence issue because "if a witness who can see testifies that he looked, and did not see an object which, if he had looked, he must have seen, such testimony is unworthy of consideration." 161 Md. 175, 179 (1931) (quoting *Baltimore Traction Co. v. Helms*, 84 Md. 515, 526 (1897)). Wilson's testimony is similarly flawed. This Court could infer that had he listened, he clearly would have heard the train's horn blaring multiple times before he drove onto the tracks. Nevertheless, because there is incontrovertible evidence that Wilson did not stop, this Court need not address the other prongs of the "stop, look, and listen" standard.

through without stopping. Did you say you did? A. I attempted to stop. Q. Okay. And what happened? A. A train came, and I got hit."). To try to create a fact dispute, Plaintiffs cite a portion of Wilson's testimony where he says he "never" just drove "across the tracks without stopping." ECF 11-11 at 90. That testimony was not specifically addressing his actions on the date of the accident. Even if it were, it is expressly contradicted by Wilson's own description of his failure to come to a complete stop on that date and by the video evidence showing he did not stop.

Taking the overall facts alleged in the light most favorable to Plaintiffs, there could be several genuine material disputes in the case, such as whether CSX was negligent in its maintenance of the area surrounding the railroad crossing and whether Wilson saw or heard the approaching train before the collision. But Plaintiffs have adduced no evidence to create a genuine issue of material fact as to a single, dispositive issue: whether Wilson complied with his duty to "stop, look, and listen" before crossing partially obscured train tracks. The facts are clear that he did not stop, which makes him contributorily negligent as a matter of law. His contributory negligence therefore precludes him from any recovery on his negligence claim.[6]

### C.  Loss of Consortium Claim

Plaintiffs do not contest CSX's argument that, under Maryland law, Houghtling's loss of consortium claim is derivative of Wilson's negligence claim. "A loss of consortium claim is derivative of the injured spouse's claim for personal injury." *Oaks v. Connors*, 339 Md. 24, 38

---

[6] Plaintiffs' theory of the train operator's alleged negligence is not elucidated to a degree where this Court can confidently summarize their contentions. To the extent they mean to suggest that the train operator could have stopped the train in time to avoid the collision, *cf. Sears v. Baltimore & O. R. Co.*, 219 Md. 118, 125 (1959) (stating the "last clear chance" doctrine), that contention is belied by the LVDR video. That video includes charts monitoring the train's operation that prove that even when all power to the train was cut after the impact, the train traveled a great distance at a significant speed before eventually grinding to a stop. Pure physics prevented the train operator from having any opportunity to prevent the crash with a car that unexpectedly encroached the tracks.

(1995); *Klein v. Sears, Roebuck and Co.*, 92 Md. App. 477, 493, *cert. denied*, 328 Md. 447 (1992) ("When a physical injury results to a married person as a result of someone else's tortious conduct, two injuries may arise: (1) the physical injury to the spouse who was directly injured by the tortious conduct and (2) the derivative loss of society, affection, assistance, and conjugal fellowship to his or her spouse."). "To the extent to which contributory negligence or any other foreclosing reason would bar recovery by the primary plaintiff, any derivative claim by the spouse is, *ipso facto*, also barred." *Dehn v. Edgecombe*, 152 Md. App. 657, 698 (2003). Because Wilson's recovery is barred by his contributory negligence, Houghtling's derivative recovery is also barred.

## IV.     CONCLUSION

For the reasons set forth above, Defendant's Motion, ECF 11, treated as a motion for summary judgment, will be GRANTED. A separate Order follows.


Dated: March 6, 2023                                        /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge